IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD A. PIZZUTI,

    Plaintiff,

    vs.

NASHVILLE HOSPITALITY
CAPITAL, LLC,

    Defendant.

Case No. 2:18-mc-0040

Judge Algenon L. Marbley

Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Quash and for Protective Order filed by Movant Ronald A. Pizzuti ("Ron Pizzuti") (ECF No. 1), Nashville Hospitality Capital LLC's ("NHC") Memorandum in Opposition (ECF No. 40) and Pizzuti's Reply (ECF No. 11). For the reasons that follow, the Motion is **GRANTED**.

### I.

**A.**     **Background for Subpoena**

Ron Pizzuti is the Founder, Chairman and Chief Executive Officer of the Pizzuti Companies, a real estate development group headquartered in Columbus, Ohio. The Pizzuti Companies currently are involved in the construction of a luxury hotel in downtown Nashville, Tennessee named the Joseph Nashville (the "Joseph Nashville").

NHC owns an upscale, full-service hotel property also located in downtown Nashville, which it operates as a Westin hotel ("the Westin"). In December 2013, NHC engaged Wischermann Partners, Inc. ("Wischermann Partners") as a consultant to help develop the

Westin.  Pursuant to that Consulting Agreement, Wischermann Partners and Paul Wischermann, its President and CEO, were involved in the development, design, and construction of the Westin.  In November 2014, NHC engaged Wischermann Partners to serve as the management company for the Westin.  The Management Agreement between NHC and Wischermann Partners contained a non-compete provision that prohibited Wischermann Partners from developing, owning, operating, or managing any hotel within a one-mile radius of the Westin.  The Management Agreement also contained a confidentiality provision that prohibited Wischermann Partners from disclosing NHC's confidential information.

NHC maintains that Wischermann Partners and Paul Wischermann had been providing identical development services to its competitor, the Joseph Nashville, which is located less than one mile from the Westin, beginning in February 2014.  NHC asserts that Wischermann Partners and Paul Wischermann failed to disclose that they were working for the Pizzuti Companies when they signed the Management Agreement containing the non-compete provision in November 2014.

The subpoena arises out of the lawsuit pending in the in the United States District Court for the Middle District of Tennessee in Nashville, Tennessee involving the development and management of the Westin in Nashville.  *Wischermann Partners, Inc., et al. v. Nashville Hospitality Group*, No. 3:17-cv-00849 (M.D. Tenn.).  NHC is a Defendant and Counter-Plaintiff in this breach of contract dispute with Wischermann Partners.  In its counterclaim in the Nashville Westin case, NHC alleges that Wischermann Partners breached a non-compete agreement with NHC when it simultaneously was working as a development consultant for Pizzuti developing the Joseph Nashville.

In 2017, NHC subpoenaed the Pizzuti affiliate in charge of the Joseph Nashville project, seeking all documents and communications involving Wischermann Partners. (Declaration of Joel D. Eckert ("Eckert Dec.") at ¶ 4.) Pizzuti produced 5,591 documents totaling 21,834 pages of materials at a cost of approximately $42,000. (*Id*. at ¶¶ 6–7.)

In May 2018, NHC subpoenaed Joel S. Pizzuti (President of Pizzuti), Daniel Gore (Vice President of Development of Pizzuti), and Ronn H. Stewart, II (Senior Vice President of Construction of Pizzuti) for depositions. According to Pizzuti, these three high-ranking Pizzuti officials are the decision makers on the Nashville Joseph project. Pizzuti allowed all three men to be deposed by NHC in September 2018 in Columbus, Ohio. On July 24, 2018, NHC subpoenaed Mr. Ronald Pizzuti for deposition.

**B.     Ron Pizzuti's Involvement in the Joseph Nashville Development and with Wischermann**

The parties' chief dispute in this matter relates to the level of involvement Ron Pizzuti had in the construction and development of the Joseph Nashville and with Wischermann Partners. NHC insists that Pizzuti's deposition is necessary to permit NHC to fully develop facts relevant to defending itself and supporting its counterclaim in the Nashville litigation. It maintains that Pizzuti was a "key figure" in the development of Nashville Joseph, which is "at the center" of the underlying litigation. (NHC's Mem. in Opp., ECF No. 6, at p. 1.)

NHC summarizes Pizzuti's involvement as follows:

> Ron Pizzuti is the CEO of Pizzuti. This is not a case where the deponent executive has little or no knowledge of discoverable information relating to the issues in the Lawsuit. Pizzuti's marketing materials related to the Pizzuti Nashville project identify Ron Pizzuti as the "Proposed Master Developer" of the project and identify him as one of the project's "Key Personnel." . . . Mr. Pizzuti's memorandum in support of his Motions admits he was included on 275 emails related to the project, and Mr. Pizzuti's name is mentioned in 448 documents in Pizzuti's production alone. . . . Mr. Pizzuti's own declaration acknowledges his

3

> longstanding involvement with the Pizzuti Nashville project. . . . Moreover, Mr. Pizzuti admits that he attends "weekly, monthly and quarterly executive committee meetings" where he receives "progress reports" on the Pizzuti Nashville project, showing that Mr. Pizzuti receives information on the project at the core of the Middle District of Tennessee action on at least a weekly basis. . . . Discovery in the Lawsuit has also revealed that Mr. Pizzuti received regular updates on the specific status of the Pizzuti Nashville project and was copied along with Paul Wischermann and other Wischermann Partners employees on detailed discussions of the Pizzuti Nashville project. . . . Additionally, materials produced by Pizzuti and other contractors confirm that Mr. Pizzuti attended and provided feedback related to several design and development meetings for the Pizzuti Nashville project. . . . In fact, Wischermann Partners' interrogatory responses delivered this past Friday confirm that Ron Pizzuti attended meetings in Nashville with Wischermann Partners and others related to the Pizzuti Nashville project. . . .

(*Id*. at pp. 4-5) (citations to record and exhibits omitted).

Ron Pizzuti maintains that his involvement in the Joseph Nashville project and interactions with Wischermann were much more limited than NHC suggest. Ron Pizzuti has demonstrated the following facts through supporting declarations. Although he still has the title of Chairman and CEO, Ron Pizzuti has been phasing out his involvement in the day-to-day operations of the organization for five years and passed those responsibilities, including operational and strategic decision-making and executive-level project management, to his son, Joel Pizzuti. (Pizzuit Dec. ¶ 3.) He currently spends the majority of his time managing a non-profit art museum in Columbus, Ohio called the Pizzuti Collection. (*Id*. at ¶ 13.)

Joel Pizzuti assumed management responsibility for the Joseph Nashville since its inception. *Id*. at ¶¶ 5-6. With respect to his involvement in the Nashville Joseph, Ron Pizzuti acknowledges that he has been involved in the following activities: (1) he attends weekly, monthly and quarterly executive committee meetings at Pizzuti's Columbus, Ohio office at which he receives a progress report on all Pizzuti projects, including the Joseph Nashville but that Joel Pizzuti runs these meetings; (2) he attended some design meetings regarding the Joseph

4

Nashville; and (3) he is selecting the art that will go in the Joseph Nashville. He also had one impromptu meeting in New York City with the interior designer of the Joseph Nashville. He is not aware of any meeting that he attended or conference call in which he participated regarding the Joseph Nashville that Joel Pizzuti, Dan Gore, and/or Ronn Stewart did not also attend or participate. (Id. at ¶ 10.) Ron Pizzuti has never been inside the Westin in Nashville. (*Id*. at ¶ 11.) He believes he has only seen Paul Wischermann one time over the last year at the ceremonial groundbreaking party for the Joseph Nashville in June of 2018. (*Id*. at ¶ 12.)

Of the 5,591 documents Pizzuti produced to NHC, Ron Pizzuti sent a total of 15 emails. (Eccert Dec. at ¶ 16.) Of those 15 emails, 8 of them were not responsive to the Subpoena because they relate to a hotel in Columbus and not the Nashville Joseph. (*Id*.) Ron Pizzuti therefore sent a total of 7 responsive emails of the 5,591 documents Pizzuti produced. (*Id*. at ¶ 17.) One email involved Ron Pizzuti telling Dan Gore to make sure Mr. Gore was on an email chain. He forwarded another email to Mr. Gore with no text presumably for Mr. Gore to address. The other five emails dealt with Ron Pizzuti replying to people associated with the Joseph Nashville attempting to schedule meetings. *Id*. None of the emails with which Ron Pizzuti is associated related to a substantive matter involving the Joseph Nashville.

Only 4 emails were sent directly to Ron Pizzuti (as opposed to carbon copying him), all of which were from Mr. Gore. Two involved scheduling meetings and two involved forwarding Pizzuti design updates from one of the architects on the Project. (Id. at 18.) Joel Pizzuti was copied on all but one of the emails Pizzuti received. (Id. at ¶ 19.) The one email Joel Pizzuti was not copied on was inconsequential. *Id*. In total, searching the production for "Ron Pizzuti," "Pizzuti Ron," and by his email address generated only 448 documents, which is composed of: (1) the 275 mostly inconsequential emails; (2) meeting minutes usually listing him as someone

who the minutes were distributed to (all of which were also distributed to Joel Pizzuti); and (3) documents, such as requests for financing or requests for bid documents which list all executive officers in the company but do not bear on his knowledge or involvement in the Joseph Nashville. (*Id*. at ¶ 20.)

**II.**

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Fed. R. Civ. P. 45. Rule 45 permits parties in legal proceedings to command a non-party to attend a deposition, produce documents, and/or permit inspection of premises. Fed. R. Civ. P. 45(a)(1). The Rule provides that the person commanded to produce documents may serve an objection on the party or attorney designated in the subpoena within the earlier of fourteen days after the subpoena is served or the time specified for compliance. Fed. R. Civ. P. 45(d)(2)(B). Upon a timely motion to quash, a court "must quash or modify a subpoena that . . . "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In considering the scope of discovery, the Court may balance Plaintiff's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367); *see also See Brown v. Mohr*, No. 2:13-cv-0006, 2017 WL 2832631, at *1 (S.D. Ohio June 30, 2017) (noting that "recent amendments to Fed. R. Civ. P. 26(b)(1) highlight certain proportionality factors which the parties are to consider in making discovery requests, responses, or raising objections") (citations omitted). The Court in

all instances "must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Rule 26(c) affords district courts with the discretion to further limit the scope of discovery under certain circumstances. Specifically, a court may issue a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" to prevent "annoyance, embarrassment, oppression, or undue burden or expense" where the movant has established good cause for such an order. Fed. R. Civ. P. 26(c)(1); *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (internal quotation marks and citation omitted).

Accordingly, if the Court finds the burden of the deposition undue, or unreasonably cumulative or duplicative, or can be obtained in more convenient less burdensome manner, the Court must quash the subpoena or issue a protective order.

**III.**

The question in this case is not whether Pizzuti has *any* discoverable information relevant to NHC's claims and defenses in the underlying Nashville litigation. The issue turns on whether Pizzuti has asserted specific facts showing good cause to forbid the deposition from going forward. The Court concludes that he has and that the discovery NHC seeks may be obtained through the depositions of Joel S. Pizzuti, Daniel Gore and Ronn H. Stewart, II. Ron Pizzuti may have some limited knowledge of Wischermann's involvement in the Joseph Nashville, but

NHC has not demonstrated that such limited, duplicative knowledge justifies his deposition in light of the fact that NHC has been permitted to take the depositions of Joel Pizzuti, Mr. Gore, and Mr. Stewart.

NHC cites to a number of documents produced in discovery in the underlying action as a basis for the deposition of Ron Pizzuti. None of these documents, however, demonstrates that Paul Wischermann or any Wischermann entity gave Ron Pizzuti any allegedly confidential information regarding the Westin. NHC supports its argument that it must depose Pizzuti by reference to an email chain which purportedly reveals that a Wischermann entity gave Pizzuti Nashville Hotel officials allegedly confidential information of the Westin at the request of "Pizzuti executives and staff." (NHC's Opp. at p. 3, ECF No. 6.) Nevertheless, NHC concedes a that Dan Gore made this request and received this allegedly confidential information. *Id*. NHC acknowledges that Ron Pizzuti was not on this email chain. NHC points to nothing in the record that demonstrates Ron Pizzuti has any knowledge relative to its claims in the underlying action which are largely premised on the theory that Wischermann and his companies provided confidential information of the Westin to Pizzuti's Nashville operations. His testimony regarding Wischermann's alleged dissemination of confidential information to Pizzuti Nashville employees would be of little to no value to NHC.

To the extent NHC argues that it is entitled to test the memories of all witnesses, including Ron Pizzuti, regarding the events that are the subject of the underlying litigation, the Court takes into account the fact that Ron Pizzuti is not a party in that case. The fact that he is not a party is a significant factor in the undue-burden analysis. *Sinclair v. Lauderdale Cty., Tn.*, 2015 WL 1393423, *3 (W.D. Tenn. March 24, 2015) (quoting *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010)). Weighing the request to test Ron's Pizzuti's memory against the burden

of submitting to multiple hours of questioning of a non-party weighs heavily against permitting the deposition to go forward.

In any event, the Court concludes that Ron Pizzuti's testimony would be duplicative of any testimony that Joel Pizzuti, Mr. Gore, Mr. Stewart and Wischermann could provide. To this end, *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406 (C.D. Cal. 2014) is instructive. In *Amini Innovation*, a defendant subpoenaed actress Jane Seymour for a deposition to testify about the design of the plaintiff's products. *Id*. at 408. Ms. Seymour argued that she had a limited role in the design of the products and that the subpoena should be quashed. She maintained that she lacked knowledge about the topics about which defendant intended to depose her, that such information could more readily be obtained from the plaintiff, and, accordingly, her testimony would be duplicative under Federal Rule 26(b)(2)(C). *Id*. The court agreed, finding that the value of her testimony would be "low or at best unknown" and the information that the defendant sought could be obtained from plaintiff and its officers. *Id*. at 411. The court determined that any deposition "would be an undue burden" and quashed the subject subpoena. *Id*.

Similarly, here, Ron Pizzuit has put forward through sworn declarations specific facts demonstrating he has very limited knowledge of the matters that are the subject of the underlying litigation. As such, his deposition would be an undue burden on him, particularly as a non-party to the litigation. Moreover, Joel Pizzuti, Mr. Gore, Mr. Stewart and Wischermann can provide the discovery sought from Ron Pizzuti regarding Wischermann's role in the Joseph Nashville. Joel Pizzuti, Mr. Gore, or Mr. Stewart attended every meeting that Ron Pizzuti attended regarding the Nashville Joseph and one of them was on every email he received or sent regarding the Joseph Nashville. The Court concludes that Ron Pizzuti's deposition is unduly burdensome

and "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court, therefore, grants his requested relief.

## IV.

For the foregoing reasons, Ron Pizzuti's Motion to Quash and for Protective Order (ECF No. 1) is **GRANTED**. NHC is prohibited from taking the deposition of Ronald A. Pizzuti.

**IT IS SO ORDERED.**

DATED: October 25, 2018

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**